### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | |
|---|---|
| BERNARD AND NANCY CARSON | ) |
| | ) |
|     PLAINTIFFS | ) |
| vs. | ) |
| | ) |
| | ) |
| OCWEN LOAN SERVICING LLC, | ) |
| | )  DOCKET NO. |
| | ) |
| THE BANK OF NEW YORK MELLON F/K/A THE | ) |
| BANK OF NEW YORK AS SUCCESSOR  TO | ) |
| TRUSTEE FOR THE BENEFIT OF THE | ) |
| CERTIFICATEHOLDERS OF POPULAR ABS, INC. | ) |
| MORTGAGE PASS-THROUGH CERTIFICATES | ) |
| SERIES 2005-C | ) |
| | ) |
|     DEFENDANTS | ) |

## COMPLAINT

## REQUEST FOR JURY TRIAL

## I.   INTRODUCTION

Bernard and Nancy Carson have been married for over 50 years and have lived in their home at 18 Therrein Ave. in Saco, Maine for over 40 years. Since 2011, they have made monthly payments on their mortgage to Ocwen per the terms of a loan modification agreement. Yet, despite court orders, numerous calls, letters, and counsel intervention, Ocwen has failed to implement the modification and apply the Carsons' payments according to its terms. Ocwen has attempted for four years to collect on inflated amounts calculated per the pre-modified terms of the loan, has repeatedly misrepresented to the Carsons that they are in default and at risk of losing their home, and has reported such inaccurate defaults to the credit reporting agencies, making it impossible for the Carsons to refinance away from Ocwen. In May of 2015, the

Carsons gave in to Ocwen's harassment and demands and, to protect their home, made the inflated payments demanded by Ocwen from their retirement savings. Ocwen's callous and egregious conduct has caused the Carsons financial harm and also severe emotional distress as they have struggled for over four years to fix the problem and save their home.

This is an action for actual, compensatory, statutory and punitive damages brought by Bernard and Nancy Carson, against Ocwen Loan Servicing LLC ("Ocwen"), and the Bank of New York Mellon f/k/a The Bank of New York as successor to JPMorgan Chase Bank, N.A., as trustee for the benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2005-C ("Bank of New York") for violations of the Bankruptcy Automatic Stay pursuant to 11 U.S.C. § 362; Bankruptcy Discharge Injunction Stay pursuant to 11 U.S.C. § 524; Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*; the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. § 11001 *et seq.* (hereinafter collectively known as the ''FDCPA''), the Maine Unfair Trade Practices Act 5 M.R.S.A. § 205-A et. seq.; the Maine Consumer Credit Code, 9-A M.R.S. §§ 9-403(F); and the Real Estate Settlement Procedures Act 12 U.S.C. § 2605 et seq., all of which prohibit abusive, deceptive, and unfair debt collection practices. The Plaintiffs also initiate this action to bring common law claims of Intentional Infliction of Emotional Distress, Fraud, and Fraudulent Misrepresentation.

## JURISDICTION AND VENUE

1.   The jurisdiction of this Court is conferred by 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

2.   Venue is proper as the Plaintiffs are residents of York County, Maine, all relevant events occurred in this District, and the Defendants were doing business in Maine during all relevant times.

## II. PARTIES

3.  Plaintiff Bernard Carson is a natural person and consumer residing in Saco, Maine.

4.  Plaintiff Nancy Carson is a natural person and consumer residing in Saco, Maine.

5.  Upon information and belief, Defendant Bank of New York Mellon f/k/a The Bank of New York is a banking association organized and existing under the laws of the United States of America with a principal place of business in New York. The Bank of New York Mellon as successor to JPMorgan Chase Bank, N.A., at all relevant times served as Trustee for the benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2005-C.

6.  Defendant, Ocwen Loan Servicing LLC ("Ocwen") is a limited liability corporation organized under the laws of Delaware, with a principal place of business in Florida.

7.  Its sole member is Ocwen Financial Corporation, a Florida corporation that is a publicly traded corporation.

8.  At all relevant times, upon information and belief, Ocwen was the servicer of the Carsons' mortgage loan on property located at 16-18 Therrien Ave. Saco, Maine, beginning in approximately September 2011.

9.  Ocwen treated the Carsons' loan as if in default when it took on the servicing of the loan.

10.  Upon information and belief, the Bank of New York hired Litton then Ocwen to service the Carsons' loan and authorized Litton then Ocwen to conduct transactions involved in the servicing of the Carsons' loan.

11. The Bank of New York was and remains the principal over its agents, Litton and Ocwen, regarding the servicing of the Carsons' loan.

12. Ocwen engages in the business of collecting debts in this state.

13. Ocwen regularly engages in the enforcement of security interests securing debts.

14. Ocwen collects debts using the mails and telephone, and Ocwen regularly attempts to collect debts alleged to be due to another.

15. Ocwen is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), 32 M.R.S.A. §§ 11002(6) and 11003(7)(C).

### III. FACTS

16.     The Carsons entered into a refinance loan on their residence located at 16-18 Therrien Ave. Saco, Maine, with Popular Financial Services, LLC, in July 2005.

17.     Mr. and Mrs. Carson filed for chapter 13 bankruptcy on November 4, 2006, case no. 06-20560 in the U.S. Bankruptcy Court, District of Maine.

18.     An assignment of the mortgage to Bank of New York as Trustee was filed with the Bankruptcy Court on August 20, 2010, asking for all correspondence to be delivered to Litton Loan Servicing ("Litton").

19.     The Carsons applied for and on or around April 24, 2011, received a permanent HAMP loan modification from Litton with an effective date of February 1, 2011, and a first payment date of March 1, 2011 (dates before the delivery date of the modification).

20.     The Carsons signed and returned the modification to Litton on or around April 27, 2011.

21.     The modification lowered the Carsons' monthly principal, interest, and escrow payment from $2,033 to $1,847.80.

22.     The loan modification also allowed for an interest-free deferment of $28,013.65 until the end of the loan and, if the Carsons remained in current status on the loan (no more than three payments behind) for three years, the Lender was to reduce the deferred balance in installments of one-third of the deferred balance each year.

23.     A copy of the cover letter and modification are attached as Exhibit 1.

24.     The Carsons made timely monthly payments per the terms of the modification.

25.     A Motion to Approve the loan modification was filed in the bankruptcy matter on September 23, 2011. Bank of New York and Litton's attorney received notice. A copy of the Motion and Notice are attached as Exhibit 2.

26.     Neither Bank of New York nor Litton responded. The Approval was granted and an Order entered on October 31, 2011, approving the modification. Bank of New York and Litton received service of the Order. A copy of the Order and service is attached as Exhibit 3.

27.     Upon information and belief, as of September 2011, Litton became a wholly owned subsidiary of Ocwen Loan Servicing, LLC.

28.     Ocwen began servicing the Carsons' loan on or around September 2011.

29.     Upon acceptance of the loan for servicing, Ocwen had and/or had access to notice of the Carsons' bankruptcy.

30.     Upon acceptance of servicing of the loan, Ocwen had and/or had access to notice of the Carsons' loan modification.

31.     Upon acceptance of servicing of the loan, Ocwen had and/or had access to notice of the Court's approval of the loan modification.

32.     In monthly billing statements for September, October, and November of 2011, Ocwen attempted to collect on the pre-modified terms of the loan. True and accurate copies of the monthly billing statements are attached hereto as Exhibit 4.

33.     On or around October 4, 2011, Ocwen delivered to the Carsons a notice alleging the loan to be in default and soliciting them to apply for a loan modification. A copy is attached as Exhibit 5.

34.     Ocwen filed a Transfer of Claim Notice in the bankruptcy on October 11, 2011. A copy is attached as Exhibit 6.

35.     The Carsons' continued to make their monthly payments per the loan modification agreement.

36.     On or around November 1, 2011, Ocwen delivered to the Carsons a letter soliciting documents for a loan modification application to cure the alleged default on the loan. A true and accurate copy of the letter is attached as Exhibit 7.

37.     On or around November 18, 2011, Ocwen delivered to the Carsons letters soliciting documents for a loan modification application. True and accurate copies of the letters are attached as Exhibit 8.

38.     In letters dated December 13 and 14, 2011, Ocwen denied the Carsons a loan modification for failure to provide documents. True and accurate copies of the letters are attached as Exhibit 9.

39.     The Carsons continued to make their monthly payments on time per the terms of their existing loan modification agreement.

40.     In monthly billing statements for 2013, Ocwen attempted to collect on amounts calculated on the pre-modified loan and alleged an increasing balance amount due each month. True and accurate copies of the monthly billing statements for January through May, July, and November of 2013 are attached hereto as Exhibit 10.

41.     Through bankruptcy counsel, the Carsons filed a Motion to Determine Mortgage Current on July 18, 2012. Notice was delivered to counsel for Ocwen, Attorney Len Morley. A copy of the Motion and Notice are attached as Exhibit 11.

42.     Ocwen requested an extension of time to respond, which was consented to by the Carsons and granted by the Court.

43.     Ocwen did not respond and an Order Determining the Mortgage Current entered on August 20, 2012. A copy of the Order is attached as Exhibit 12.

44.     Ocwen and Litton received the Order on or around August 22, 2012. A copy of the Notice is attached hereto as Exhibit 13.

45.     The Carsons received a discharge of their bankruptcy on August 28, 2013.

46.     Litton and Ocwen were served with notice of the discharge, attached hereto as Exhibit 14.

47.     During this time, Mr. Carson made multiple calls to Ocwen to alert Ocwen that he was current on the loan, that he had a modification in place, and had completed a chapter 13 bankruptcy.

48.     In a letter dated February 7, 2014, Ocwen acknowledged the Carsons' communications and issues and recognized that a modification was in place while stating that, "per the modification the principal and interest was $1,435.75 and later the payment was changed to $2,033.73 which is valid." (emphasis added).  A true and accurate copy of the letter is attached as Exhibit 15.

49.     Ocwen did not explain how or why the payment had risen to $2,033.73, the same amount as the pre-modified payment.

50.     On February 8, 2014, the Carsons delivered a letter to Ocwen to the address designated by Ocwen for Qualified Written Request (QWR), alerting Ocwen of the failure to implement the modification, including failure to forgive the deferred principal and failure to report the Carsons as current on their credit reports. Mr. Carson explained that he wanted to refinance the mortgage

away from Ocwen but could not do so until Ocwen corrected its errors. A true and accurate copy of the letter is attached as Exhibit 16.

51.    In monthly billing statements for 2014, Ocwen attempted to collect on amounts calculated on the pre-modified loan and alleged an increasing balance amount due each month. True and accurate copies of the monthly billing statements for April through June, August, October, and December are attached hereto as Exhibit 17.

52.    On February 26, 2014, the Consumer Financial Protection Bureau (CFPB), together with attorneys general and state banking regulators in 49 states and the District of Columbia, obtained a Consent Judgment against Ocwen Financial Corporation, and its subsidiary, Ocwen Loan Servicing. The consent order addresses Ocwen's misconduct in mortgage servicing. It also covers two companies previously purchased by Ocwen, including Litton.  A copy of the Consent Judgment can be found at:

https://nationalocwensettlement.com/Portals/0/Documents/ConsentJudgement.pdf

53.    Ocwen continued to inaccurately report the Carsons as late on their credit reports.

54.    The Carsons applied for and were denied a refinance of the loan at the end of 2014 based on the inaccurate reporting of monies owed to Ocwen.

55.    In a letter to the Carsons dated January 11, 2015, Ocwen alleged the loan was in default and that no payments had been made for December 2014 and January 2015. A true and accurate copy of the letter is attached as Exhibit 18.

56.    The Carsons had made both payments on time.

57.    In a letter dated February 9, 2015, Ocwen solicited the Carsons for a loan modification application. A true and accurate copy of the letter is attached as Exhibit 19.

58.     Believing this may be the only way to resolve the issue, the Carsons provided the requested documents.

59.     The Carsons continued to make timely monthly payments per the modification.

60.     Upon information and belief, Ocwen misapplied the Carsons' payments per the pre-modified terms of the loan rather than the modified terms.

61.     Ocwen delivered additional default letters to the Carsons dated February 11, 20, and 24 of 2015, threatening foreclosure for nonpayment. By the February 24th letter, Ocwen alleged $4373.25 due. True and accurate copies of the letters are attached as Exhibit 20.

62.     Through their bankruptcy counsel, the Carsons delivered by fax on March 4, 2015, to Ocwen, to the fax number for the Research Department provided by Ocwen, proof of the loan modification, order approving the modification, order deeming the loan current, and allegations of Ocwen's failure to recognize the loan modification. A true and accurate copy of the fax is attached hereto as Exhibit 21.

63.     Meanwhile, the Carsons continued to receive requests for documents from Ocwen for a new modification and provided all such documents with the help of counsel.

64.     The Carsons incurred fees with their bankruptcy attorney for assistance with applying for the modification.

65.     In letters dated March 16 and 19 of 2015, Ocwen again alleged the Carsons were in default on the loan. True and accurate copies of the letters are attached as Exhibit 22.

66.     In the letter dated March 19, 2015, Ocwen alleged the Carsons owed $4,618.20.

67.     On April 9, 2015, Ocwen acknowledged the loan modification packet was complete.

68.     In a letter dated April 10, 2015, Ocwen denied the loan modification to the Carsons, stating: "We are unable to offer you a Home Affordable Modification because: You are current

9

on your mortgage loan and after reviewing the financial information you provided, we have determined that you are not at risk of default." A true and accurate copy of the letter is attached as Exhibit 22.

69.     Then, in a letter dated April 13, 2015, Ocwen claimed the Carsons were in default with payments due for March and April of 2015. A true and accurate copy of the letter is attached as Exhibit 23.

70.     In a letter dated April 24, 2015, Ocwen again alleged the Carsons were in default on the loan and provided information about how to prevent foreclosure. A true and accurate copy of the letter is attached as Exhibit 24.

71.     The Carsons attempted to refinance the loan during 2015 but were again denied due to the inaccurate delinquencies reported by Ocwen on their credit reports.

72.     Desperate to avoid losing their house to foreclosure and to fix the inaccurate billing and credit reporting, the Carsons drew money from their retirement savings and made a payment to Ocwen in the alleged amount owed of $5,546.61 on May 6, 2015.

73.     Thereafter, the Carsons made a monthly payment amount to Ocwen in the inflated amount alleged due of $2,617.26 and continue to make the inflated payment.

74.     Paying the over $200 per month extra on the loan has affected the Carsons financially, including preventing them from traveling south during the winter and visiting their grandchildren in Virginia.

75.     The Carsons hoped Ocwen would begin to report them as current so that they could refinance the loan away from Ocwen.

76.     Ocwen continued to deliver statements to the Carsons reflecting the pre-modified terms of the loan. True and accurate copies of the monthly billing statements for January, June, July, August, and September of 2015 are attached hereto as Exhibit 25.

77.     Mr. Carson made repeated phone calls to Ocwen from 2011 through 2015 to fix the problem to no avail.

78.     In August 2015, the Carsons decided to retain undersigned counsel to represent them in their claims against Ocwen outlined in this complaint.

79.     On September 24, 2015, through counsel, the Carsons delivered a Qualified Written Request (QWR) with a Notice of Error and Request for Information to the address designated by Ocwen for such correspondence.

80.     The QWR was received by Ocwen on September 29, 2015. A true and accurate copy of the QWR and proof of delivery and receipt is attached as Exhibit 26.

81.     Ocwen did not respond to the QWR.

82.     The Carsons, through counsel, delivered a demand letter pursuant to 5 MRSA § 213 to Ocwen on September 16, 2015, which was received by Ocwen on September 19, 2015.

83.     The Carsons, through counsel, delivered a follow up demand letter on September 21, 2015, to Ocwen and their counsel.

84.     Ocwen responded to the demand letter on December 7, 2015. Ocwen agreed to implement the HAMP loan modification and bring the Carsons' account current, including credit to the account for all purported overpayments, and to correct the credit reporting on the Carsons' account. This has not yet been completed.

85.     This also does not begin to compensate the Carsons for Ocwen's misconduct and the extreme distress suffered by the Carsons as a result of Ocwen's misconduct.

86.     The Carsons continue to make the inflated payment each month to Ocwen for fear of Ocwen proceeding with the foreclosure.

87.     The Carsons incurred and paid legal fees to their bankruptcy counsel for attempts to correct Ocwen's misconduct.

88.     The Carsons paid current counsel to draft and deliver the QWR and have incurred additional fees in pursuing these claims against Ocwen.

89.     Now, when they are finally able to refinance the loan, the Carsons will be subject to a higher interest rate as a result of Ocwen's failure to correct the issues sooner.

90.     Upon information and belief, Ocwen has engaged in a pattern and practice of failing to properly service mortgage loans including failing to properly transfer and implement loan modifications as they did with the Carsons.

91.     Upon information and belief, Ocwen has engaged in a pattern and practice of attempting to collect on amounts not due under mortgage loans from bankruptcy debtors as they did with the Carsons, including failure to properly apply mortgage payments throughout the course of the bankruptcy and attempting to collect on amounts not due in loans deemed current through the bankruptcy process.

92.     Ocwen's conduct had and continues to have dire effects on the Carsons. The repeated efforts to get Ocwen to implement the loan modification, notices from Ocwen alleging they were behind and in default when they were paying each month, the contradictory letters from Ocwen alleging they were in default, then current, then in default, the innumerable phone calls to try and fix the problem, the loan modification applications and repeated document submission, and, finally, Ocwen's misreporting on their credit report caused the Carsons extreme distress.

93.     Mr. and Mrs. Carson are elderly and have health issues that were exacerbated by Ocwen's conduct.

94.     Mr. Carson, who has heart and blood pressure issues, would get very distressed during the phone calls with Ocwen, or when receiving inaccurate notices from Ocwen and, at times, would pass out on the floor, injuring himself. After his calls with Ocwen he would take a nitroglycerin to prevent himself from having a heart attack. At times, his heart raced so fast that Mrs. Carson would take him to the emergency room.

95.     Mr. Carson feels dejected and depressed: he believes he has wasted so much of the little time he has left in his life dealing with Ocwen. Most of all, Ocwen's conduct has made Mr. Carson very afraid of what might happen to his wife Nancy if he passes away. He does not believe Ocwen will stop its misconduct until they take the house. He also worries about their finances with making the extra $200 per month payment to Ocwen and Nancy's financial stability if he passes away and this has not been resolved.

96.     Mrs. Carson has faced extreme stress as a result of Ocwen's misconduct as well. She has broken down and cried on several occasions due to the stress and many times was at the point of telling Ocwen to just take the house and leave them alone. Mr. Carson, however, did not want to give up. Mrs. Carson cannot sleep and worries all the time about the house and finances. If Ocwen did take the house, they would lose additional rental income as the property is a duplex.

97.     Mr. and Mrs. Carson have been in the home for 40 years, they raised their children in this house and their grandchildren come to visit and use the pool. If they lost the house, they would most likely end up in senior subsidized housing with limited ability to have their grandchildren visit. Most of all, Mrs. Carson is concerned for Mr. Carson's wellbeing.

98.     Mr. and Mrs. Carson's relationship has also been severely affected by all the stress Ocwen caused and they have discussed divorcing after 53 years of marriage. They fight often about the mortgage payment. The fighting has escalated to the point that Mr. Carson sometimes leaves and spends the night at their daughter's house. Mrs. Carson feels that Ocwen will take the house anyway regardless of what they do but Mr. Carson will not give up. Their daughter will not come visit anymore because of the constant fighting.

## V. CLAIMS

**COUNT ONE: Violation of the Bankruptcy Automatic Stay, 11 U.S.C. § 362**
**(Ocwen/ Bank of New York)**

99. The Plaintiffs repeat and reallege and incorporate by reference the paragraphs above as if fully set out herein.

100.    Ocwen and/or their counsel had notice of the Carsons' bankruptcy and participated in the Carsons' bankruptcy. *See* Exhibits 3, 6, 11, 12, 13, and 14.

101.    Ocwen violated the Bankruptcy Automatic Stay, 11 USC § 362 by, including but not limited to, having notice of the bankruptcy filing and willfully 1) attempting to collect on pre-petition, pre-modification loan debt per the original terms of the loan after a permanent modification changed the terms of the mortgage and the bankruptcy court approved the loan modification; 2) by misapplying post-petition payments per the pre-modified terms of the loan; and 3) by reporting inaccurately to the credit reporting bureaus.

102.     Ocwen's conduct was unfair, coercive, harassing, willful, and knowing.

103.    The Carsons felt harassed and coerced to the point that they believed Ocwen would eventually take their home if they did not pay the large amounts of alleged arrears or the pre-modified payment amount.

104.    As a result of Ocwen's conduct, including its actions and inactions, the Carsons suffered

actual damages, including but without limitation: attorneys' fees and costs, utter frustration and desperation, and other emotional and mental distress as outlined above.

105.     Further, as detailed above, Ocwen has engaged in a pattern and practice of trying to collect from debtors on debts listed in bankruptcy.

106.     Such conduct is outrageous and egregious.

107.     Ocwen's actions demonstrate its knowing, willful violation of 11 U.S.C. § 362.

108.     Ocwen is in violation of the Bankruptcy Automatic Stay and the Carsons are entitled to receive from the Defendants actual and compensatory damages, including costs and attorneys' fees, and punitive damages in this matter pursuant to 11 U.S.C. § 362, and further relief as may be just and proper.

109.     As the principal of Ocwen, Bank of New York is jointly and severally liable for Ocwen's conduct.

110.     Bank of New York had notice of the bankruptcy and discharge. *See* Exhibits 2, 3, 12, and 14.

### <u>COUNT TWO</u>: Violation of the Bankruptcy Discharge Injunction, 11 U.S.C. § 524 (Ocwen/ Bank of New York)

111.     The Plaintiffs repeat and reallege and incorporate by reference the paragraphs above as if fully set out herein.

112.     Ocwen had notice of the Carsons' bankruptcy, including the discharge, and participated in the Carsons' bankruptcy. *See* Exhibits 2, 3, 6, 11, 12, 13, and 14.

113.     Ocwen violated the Bankruptcy Discharge Injunction, 11 USC § 524, by, including but not limited to, having notice of the bankruptcy filing and willfully 1) attempting to collect on pre-petition, pre-modification loan debt per the original terms of the loan after a permanent modification changed the terms of the mortgage and the bankruptcy court approved the loan

modification; 2) by failing to credit payments received from the Carsons per the modified and court-approved terms of the loan; and 3) by reporting inaccurately to the credit reporting bureaus.

114.    Ocwen's conduct was unfair, coercive, harassing, willful, and knowing.

115.    The Carsons felt harassed and coerced to the point that they believed Ocwen would eventually take their home if they did not pay the large amounts of alleged arrears or the pre-modified payment amount.

116.    As a result of Ocwen's conduct, including its actions and inactions, the Carsons suffered actual damages, including but without limitation: attorneys' fees and costs, utter frustration and desperation, and other emotional and mental distress as outlined above.

117.    Further, as detailed above, Ocwen has engaged in a pattern and practice of trying to collect from debtors on debts listed in bankruptcy.

118.    Such conduct is outrageous and egregious.

119.    Ocwen's actions demonstrate its knowing, willful violation of 11 U.S.C. § 524.

120.    Ocwen is in violation of the Bankruptcy Discharge Injunction and the Carsons are entitled to receive from the Defendants actual and compensatory damages, including costs and attorneys' fees, and punitive damages in this matter pursuant to 11 U.S.C. § 524, and further relief as may be just and proper.

121.    As the principal of Ocwen, Bank of New York is jointly and severally liable for Ocwen's conduct.

122.    Bank of New York had notice of the bankruptcy.  *See* Exhibits 2, 3, 12, and 14.

**COUNTS THREE and FOUR: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 Et Seq. And 32 M.R.S.A. § 11001 Et Seq.: Maine Fair Debt Collection Practices Act**
**(Ocwen)**

16

123.    The Plaintiffs repeat and reallege and incorporate by reference the paragraphs above as if fully set out herein.

124.    Within one year prior to the filing of this suit, and ongoing for more than one year prior, by example only and without limitation, Ocwen violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. and the Maine Fair Debt Collection Practices Act 32 M.R.S.A. § 11001 et seq. (collectively the "FDCPA"), as outlined above, specifically by:

a.   Falsely representing the character, amount, and legal status of the loan debt through letters dated at least October 4, 2011, to the present and through reports to the credit reporting agencies (15 U.S.C. § 1692e(2); 32 M.R.S.A. § 11013(2)(B));

b.   The use of false representations and deceptive means to collect on the loan debt through letters, statements, and inaccurate credit reporting (15 U.S.C. § 1692e(10); 32 M.R.S.A. § 11013(2));

c.   Engaging in conduct, the natural consequence of which was to harass, oppress or abuse the Carsons in connection with the collection of the mortgage debt by delivering notices seeking payment of monies not owed, misapplying payments, and reporting inaccurate amounts owed to the credit reporting agencies. (15 USC § 1692d ; 32 M.R.S.A. § 11013(1));

d.   Communicating with the Carsons in connection with the collection of the alleged inflated mortgage debt when Ocwen knew that the consumers were represented by an attorney with respect to that debt and had knowledge of that attorney's name and address. (15 USC § 1692c(2); 32 M.R.S.A. § 11012(1)(B));

e.   Using unfair or unconscionable means to collect or attempt to collect on the mortgage debt through letters, statements, misapplication of payments, and inaccurate credit reporting. (15 USC § 1692f; 32 M.R.S.A. § 11013(3)).

125.    As a result of the conduct, actions and inactions of Ocwen, the Carsons suffered actual damages including, without limitation, legal fees and costs, harassment, coercion, fear and anxiety, and other emotional and mental distress as detailed above.

126.    The Carsons are entitled to recover actual damages, including emotional distress damages, statutory damages, costs and attorney's fees from Ocwen, and such further relief as may be just and proper.

**COUNT FIVE:** **Illegal, Fraudulent or Unconscionable Conduct In Attempted Collection Of Debts In Violation of the Maine Consumer Credit Code 9-A M.R.S. §§ 9-403(F)&(G) (Ocwen/ Bank of New York)**

127.    The Plaintiffs repeat and reallege and incorporate by reference the paragraphs above as if fully set out herein.

128.    In an effort to collect the Carsons' mortgage debt Ocwen disclosed information concerning the mortgage loan to national credit reporting agencies knowing that a permanent loan modification was in effect and the debt was part of a bankruptcy.

129.    Ocwen knew that the debt was in dispute yet it did not disclose that fact and then failed to take any action to correct the inaccurate information after receiving notice of the improper disclosure.

130.    Ocwen thereby violated the Maine Consumer Credit Code (MCCC), 9-A M.R.S. §§ 9-403(F).

131.    Ocwen also attempted to collect on the mortgage debt after such activity had been barred by a final order of a court of the United States, the Consent Judgment, in violation of 9-A M.R.S. §§ 9-403(G).

132.    Per the Consent Judgment, Ocwen was obligated to "cease all collection efforts while the borrower (i) is making timely payments under a trial loan modification." Ocwen 2014 Consent

18

Judgment at Exhibit A, p. A-26, par. (D)(4) found at

https://nationalocwensettlement.com/Portals/0/Documents/Exhibit%20A.pdf

133.    As stated above, Ocwen continued to send monthly statements and delinquency notices

to the debtors seeking the pre-modification amounts due during the modification period. *See*

Exhibits 4, 9, 17, 18, 19, 20, 21, 22, 23, 24 and 25.

134.    Ocwen's behavior was so outrageous and egregious as to constitute malice or implied

malice.

135.    Such violations constitute a violation of the Maine Unfair Trade Practices Act pursuant

to 9-A M.R.S. § 9-408.

136.    The Plaintiffs demand judgment for actual damages, including emotional damages,

statutory damages, punitive damages, their attorneys' fees and costs, for pre-judgment and post-

judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and

proper.

137.    As the principal of Ocwen, Bank of New York is jointly and severally liable for Ocwen's

conduct.

**COUNT SIX: Violation of the Unfair Trade Practices Act, 5 M.R.S.A. § 205-A et. seq.**

138.    The Plaintiffs repeat and reallege and incorporate by reference the paragraphs above as if

fully set out herein.

139.    The Defendants violated the Maine Unfair Trade Practices Act by engaging in unfair and

deceptive conduct, including but not limited to: (a) failing to implement the loan modification;

(b) attempting to collect on the pre-modification terms of the debt after the Carsons accepted the

modification offer and made payments on the offer; (c) failure to correct the issue after

complaints by the Carsons and their counsel; (d) soliciting the Carsons for a new modification

19

and inducing them to engage in the lengthy, time consuming process of applying for a new modification when they were current on the Litton modification; (e) misrepresenting the status of the loan as in default, current, and then in default when it was current; (f) failing to reduce the deferred principal balance per the terms of the loan modification; and (g) misreporting inaccurate amounts due to the credit reporting agencies.

140.    Such conduct was unfair and deceptive as it would mislead the average consumer and did mislead the Carsons regarding the status of their loan and amounts owed.

141.    Such conduct misled the Carsons to believe the only way to save their house was to pay the inaccurate amounts alleged owed, which they did, and refinance away from Ocwen.

142.    As the principal of Ocwen, Bank of New York is jointly and severally liable for Ocwen's conduct.

143.    The Plaintiffs demand judgment for actual damages, including emotional damages, their attorneys' fees and costs, for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

### COUNT SEVEN: Violation of the Real Estate Settlement Procedures Act 12 U.S.C. § 2605 et seq.

144.    The Plaintiffs repeat and reallege and incorporate by reference the paragraphs above as if fully set out herein.

145.    The Carsons, individually and through counsel, delivered qualified written requests (QWRs) to Ocwen on February 8, 2014, March 4, 2015, and September 24, 2015, all of which were to Ocwen's designated address or fax number. The name of the borrowers, the account number, and a statement of the reasons why the Carsons believed the account was in error, including supporting documents, were included in the March and September QWRs.

146.     Ocwen failed to respond within 30 business days to the QWRs, failed to make appropriate corrections on the account, including implementing the terms of the modification, crediting all overpayments, and accurately reporting the loan to the credit reporting agencies as current, and failed to provide a written explanation or clarification of its response or lack thereof.

147.     Ocwen failed to provide the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

148.     Upon information and belief, Ocwen continued to provide information regarding alleged overdue payments by the Carsons to the credit reporting agencies during the 60-day period after receipt of the QWRs.

149.     Ocwen failed to respond per the statute on three separate occasions, which constitutes a pattern and practice of violation of RESPA.

150.     Had Ocwen investigated the issues and corrected the account, the Carsons would not have had to incur fees with their bankruptcy counsel to help fix the error and apply for a loan modification, retain and pay current counsel, make an inflated payment to cure the alleged default, and make inflated payments each month so that Ocwen did not proceed with foreclosure of the home. The Carsons also would not have suffered much of the emotional distress described above as their loan would have been brought current and the risk of losing the home would be gone.

151.     The Carsons are entitled to actual and statutory damages, as well as attorneys' fees and costs, and any other relief the Court deems appropriate.

**COUNT EIGHT: Intentional Infliction of Emotional Distress**
**(Ocwen/ Bank of New York)**

21

152.    The Plaintiffs repeat and reallege and incorporate by reference the paragraphs above as if fully set out herein.

153.    Ocwen engaged, and continues to engage, in reckless, extreme, and outrageous conduct by continuing to attempt to collect on a debt that has been satisfied in full and misrepresenting outrageous amounts due by the Carsons, after at least two demand notices from counsel about the misconduct.

154.    Ocwen intentionally and/or recklessly inflicted severe emotional distress on the Carsons, as outlined above.

155.    Ocwen knew or should have known that such distress was substantially certain to occur by their continued efforts and harassment for almost four years to try and collect on a debt that was not owed by the Carsons and that put their home of over 40 years in jeopardy.

156.    As stated above, upon information and belief Ocwen has engaged in a pattern and practice of failing to implement loan modifications and/or attempting to collect on debts not owed, specifically defaults cured by a loan modification and/or a bankruptcy.

157.    Here, Ocwen continued to engage in such conduct even after innumerable calls by Mr. Carson to fix the issue, faxes and letters from his bankruptcy counsel, and letters from current counsel.

158.    Ocwen's prior and continued misconduct is so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

159.    Such misconduct was done knowingly, willfully, wantonly, and with implied or actual malice.

160.    As detailed above, Ocwen's past and continued actions caused and continue to cause Plaintiffs emotional distress so severe that no reasonable person could be expected to endure it, as outlined above.

161.    The Defendants are liable to the Plaintiffs for damages for emotional distress and punitive damages, and for such other and further relief as may be just and proper.

162.    As the principal of Ocwen, Bank of New York is jointly and severally liable for Ocwen's conduct.

<u>**COUNTS NINE and TEN**</u>**: Fraud and Fraudulent Misrepresentation**
**(Ocwen/ Bank of New York)**

163.    The Plaintiffs repeat and reallege and incorporate by reference the paragraphs above as if fully set out herein.

164.    Ocwen engaged in fraud and fraudulent misrepresentations against the Plaintiffs.

165.    Ocwen made false representations to Mr. and Mrs. Carson, including but not limited to (a) representing for a period of over four years that the Carsons owed monthly inflated payments and principal on their mortgage and an increasing past due amount based on the pre-modification terms of the loan (*See* Exhibits 4, 10, 17, and 18-25); (b) that they should apply for a loan modification to cure the alleged default (*See* Exhibits 5, 7, 8, 9, and 18-24); (c) that the loan was in default, then current, then in default again only three days later (*See* Exhibits 21, 22, 23, and 24); and (d) that Ocwen would not correct the problem despite the Carsons' and their counsels' attempts at a resolution.

166.    Ocwen's false representations were material facts related to the Carsons' loan, i.e., the amounts due and the status of the loan.

167.    Ocwen made the false representations knowing that: (a) a permanent loan modification was in effect, and had been approved by the bankruptcy court on October 31, 2011, bringing the loan current and reducing the monthly payments and principal due on the loan; (b) the loan was deemed current by the bankruptcy court as of August 20, 2012; and (c) the Carsons had made every payment on time since the loan was deemed current by the bankruptcy court in the amount required, which Ocwen accepted and misapplied for over four years.

168.    Ocwen's misrepresentations were knowing and/or reckless as they had the information and ability to correct the error but never did.

169.    Ocwen made the false representations to the Carsons to try and collect more money on the loan.

170.    The Carsons justifiably relied on Ocwen's representations to their detriment when they made over four years of modification payments, incurred the time and expense of submitting a loan modification application to hopefully correct the problems, and then used their retirement savings to cure that alleged default, bring the loan current, and keep the loan current by making inflated payments each month.

171.     The Carsons also suffered emotional damage by Ocwen's misconduct as outlined in detail above.

172.    Such conduct by Ocwen was calculated to benefit Ocwen financially.

173.    Ocwen's conduct was deliberate, knowing, intentional, and so outrageous and egregious as to constitute malice or at least to imply malice.

174.    As such, the Plaintiffs are entitled to actual, compensatory, and punitive damages, and to any other relief this Court finds just and appropriate.

175.    As the principal of Ocwen, Bank of New York is jointly and severally liable for Ocwen's conduct.

## DEMAND FOR JURY TRIAL

The Plaintiffs, Bernard and Nancy Carson, request a trial by jury on all counts.

Dated at Biddeford, Maine, this 17th day of December, 2015.


MOLLEUR LAW OFFICE

By:  /s/ Andrea Bopp Stark
Andrea Bopp Stark, Esq.
Counsel for Plaintiffs Bernard and Nancy Carson
419 Alfred Street
Biddeford, Maine  04005-3747
(207) 283-3777
(207) 284-4558 Fax
andrea@molleurlaw.com

TERRY GARMEY AND ASSOCIATES

Gary Goldberg, Esq.
482 Congress Street, Suite 402
Portland, ME  04101-3424
(207)899-4644
ggoldberg@garmeylaw.com